Chief Judge Desmond (dissenting).
This conviction should be reversed because of the error committed at the trial in admitting against defendant, despite objection, the testimony of defendant’s wife as to what she saw in their home a few hours after the alleged burglary. It is not possible to affirm here without overruling People v. Daghita (299 N. Y. 194), and New York’s public policy as expressed in section 2445 of the Penal Law and explained in Daghita forbids such a change.
Defendant was convicted of grand larceny, second degree, on an indictment which charged that on August 9, 1959 he and three other men broke into a sporting goods store in Batavia, New York, and carried away several guns and some ammunition. It was part of the theory of the prosecution that during the early morning hours after the alleged crime the stolen goods were taken in defendant’s automobile to defendant’s home in *84 Buffalo and that two (or three) other members of the robbery gang met with defendant in the kitchen of his home where the stolen guns were laid out on a table. Obviously, this was a secret meeting. Communication to defendant’s wife of the fact of the meeting and of its purpose and significance was essentially confidential. Allowing the wife to testify as to the fact so discovered by her in her own home was a violation of law so fundamental and so damaging to her husband’s defense that it cannot be excused without a major change in our construction of section 2445.
The prosecution put in testimony that defendant had furnished the car in which the stolen goods were transported and had acted as a lookout and that the guns and ammunition were taken to his home where they were placed on a kitchen table and where the culprits had a meeting. Two of the participants called as prosecution witnesses swore that during the kitchen conference defendant’s wife came into the room to get milk for her baby and, seeing the men and the guns, told the men to get. the guns out of her house. Then the wife herself was called to the stand as a prosecution witness. The court overruled the defense’s objections based on section 2445. She testified that about six o’clock that morning she came into the dark kitchen to get milk for her child and saw two of the alleged robbers there with her husband. She ordered them from the house.
In Daghita’s case (299 N. Y. 194, supra) this court unanimously rejected the same two arguments made by the People here: first, that actions of one spouse in the presence of another do not constitute confidential communications; and, second, that absence of an intent to make defendant’s actions confidential was shown by the fact that a coculprit was present when the disclosure took place. Daghita was a policeman who stole merchandise from a store he was supposed to protect. He was observed by his wife bringing the goods into his home during the night and hiding them there. On one occasion, so the wife testified, she went with her husband and his accomplice to the store and sat in an automobile while the two men brought out stolen articles. In reversing the Daghita conviction, we held (p. 199) that the term “ communication ” includes 1 ‘ knowledge derived from the observance of disclosive acts done in the *85 presence or view of one spouse by the other because of the confidence existing between them by reason of the marital relation and which would not have been performed except for the confidence so existing ”, Thus we turned into an express holding the dictum found in People v. Woltering (275 N. Y. 51, 57, 61). As we pointed out in DagMta, there is no essential difference between testimony as to what a husband told his wife and testimony as to what he allowed her to learn for herself from observing his conduct.
As to defendant’s associates being in the kitchen with him when the wife made her observations, it is true that comunications made in the presence of a third party are usually regarded as not privileged because not made in confidence. But confidentiality sometimes exists even in such instances (Wolfle v. United States, 291 U. S. 7, 14, 17). When the presence of the third person or persons is, as in DagMta (supra) and as in this case, part of the very fact confidentially communicated, the presence of those others cannot destroy confidentiality.
The opinion for affirmance in this court suggests that the husband’s privilege under the statute was in some way removed or waived because the wife testified before the Grand Jury (contra, see People v. Eckert, 2 N Y 2d 126, 128) and because the husband made pretrial admissions including the statement: ‘ ‘ My wife got up and saw that there were guns laying on the kitchen table. She told them to get out and get the guns out which they did.” There is nothing to show that the husband consented to his wife’s giving the Grand Jury testimony or that she then knew anything about the law of husband-wife privilege. The husband’s statement to a State trooper before trial said nothing about waiver. A waiver to be effective would have to be made at the trial and at the trial defendant strongly objected to any testimony by his wife.
Proof of the defendant’s guilt is strong but much stronger is our public policy as announced in People v. Daghita (299 N. Y. 194, supra). Founded on “ the sanctities of the marriage relation ’ ’, the rule as to nondisclosure is to be “ strictly construed ” and an error in relation to it is not technical but affects “ the substantial rights of the defendant ”.
The judgment should be reversed and a new trial ordered.
*86 Judges Fuld, Froessel and Foster concur with Judge Burke ; Chief Judge Desmond dissents in an opinion in which Judges Dye and Van Voorhis concur.
Judgment affirmed.