The **FRANKLIN LIFE INSURANCE COMPANY**, an Illinois corporation, Plaintiff-Appellant,

v.

**WILLIAM J. CHAMPION AND COMPANY**, a Michigan corporation, Defendant-Appellee.

No. 15753.

United States Court of Appeals Sixth Circuit.

Dec. 22, 1965.

Fischer, Sprague, Franklin & Ford, Leon R. Jones, David G. Barnett, Detroit, Mich., for appellant.

Cross, Wrock, Miller, Vieson & Kelley, Glen R. Miller, Richard F. Newton, David H. Patton, Detroit, Mich., for appellee.

Before MILLER* and PHILLIPS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Appellant filed a petition for rehearing involving many of the questions decided by this court in its opinion. We have given consideration to the arguments advanced, and, with the exception of one point, we are of the view that none of the others call for a discussion in our determination on the petition for rehearing.

Appellant submits that the court erred in holding that "it appears just as contrary to public policy in Michigan to let an intern testify as to what an ill man tells him * * * as it would be to permit the patient's own physician to testify * * *." The exact wording of the opinion, in this regard, is "it appears just as contrary to public policy, in Michigan, to let such an intern testify as to what an ill man tells him upon his entrance into a hospital while suffering from a brain lesion, as it would be to permit the patient's own physician to testify as to what he learned from him while acting in his professional capacity."

The Michigan statute provides:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character * * *."

Appellant bases its contention on the claim that a communication made by a

patient to an intern, who is not duly authorized to practice medicine or surgery, is not a privileged communication. What appellant sought to introduce was the testimony of an intern as to what Mr. Champion told him of his medical history and physical condition when the intern sought such information in order to make a record for the use of the physician or surgeon who attended Mr. Champion in a professional capacity. If the intern had not taken the medical history and statement of physical condition of Mr. Champion when he came into the hospital, suffering from a brain lesion, the attending physician or surgeon would have been obliged to do so himself.

Although the intern in question had not yet been licensed as a practicing physician, he was on "medical service" at the time; his duties under the rules of the hospital included the taking of medical histories from patients who were to undergo medical treatment or surgery; and he was acting under the direction of the attending physician and also the hospital administrator.

When Mr. Champion entered the hospital, the intern gave him a specified test, including a certain injection—not routine—of a diagnostic nature or function, directed "toward treatment." The hospital records made by the intern were offered in evidence by appellant "on the theory that the past recollection [of the intern] is recorded." The intern testified on the trial that the notes of the medical history were in his handwriting and that the record showed his signature; but he had no recollection of the case.

█ In any event, we place our disposition on the ground that what the patient told the intern was a privileged communication.

The trial court properly analyzed the problem, in our view, when it stated:

"The reason for the physician-patient privilege, is, as I see it, is that

---

* The late Judge Shackelford Miller presided at the hearing of this case and concurred in the opinion heretofore filed, but was not a member of the court denying this petition for rehearing.

the physician is forbidden to testify when he obtains information by reason of his employment and the confidential communications that are given to him, or entrusted to him in a professional character and necessary to enable him to perform his duties or provide care. * * *

"I think a patient in the hospital when he gives that information to an intern, he is assuming that it has the same confidential stature that it does if he gave it to his own physician. I would rather assume that when I am giving a history to an intern I am giving it in the capacity as a doctor. I would assume even this, that let's say for instance we have a phoney doctor, one who is—who has by fraud obtained a certificate and might not have any medical education, and a patient goes to him. He might not be a doctor, technically or really, but the information was given to him in that capacity.

" * * * I certainly would not give a history to an intern if I were to assume it didn't have some confidential—be of a complete confidential nature, because what I am telling an intern, I give to him as a doctor. I realize that that is part of his training. I assume when I go there that he is under the jurisdiction of my doctor and under the direction of my doctor. * * * And they do more than just take histories. In an emergency he would have to act, and he would have to act on the information that I gave him in the history, assuming that my own doctor wasn't there."

The court then addressed the witness, who was the intern taking Mr. Champion's statement when he entered the hospital, and who afterward became a licensed physician, as follows:

"Q. Correct, Doctor?

"A. It seems correct, yes.

"Q. Am I in error in any way?

"A. No, I don't think so, sir."

It is true that the Supreme Court of Michigan has never ruled directly on this point. Some jurisdictions have taken the view that statutes, making communications between physicians and patients privileged, include, by implication, the attendants who are assisting or acting under the direction of the physician in his treatment of a patient, and that such an attendant is precluded from disclosing any information concerning the patient which is acquired during such treatment. Some jurisdictions hold to the contrary. But in our view, when an intern may properly be said to be the agent of the physician in taking part in the treatment of a patient, the privilege applies in the case of the intern as it would in the case of the physician on whose behalf he acts. If an intern, on medical service in a hospital, informed a patient that the patient's regular attending physician had requested the patient, through him, to give such intern all the medical information regarding himself, which would be privileged if given to the physician or surgeon himself, such information given to the intern would be equally privileged; and a statute applying to privileged communications made to a person, regularly authorized to practice medicine, would include, as privileged, such a communication made to an intern acting as the agent and on behalf of the regular attending physician. For all practical purposes, the foregoing is the same as the case before us.

Appellant refers to the statutory privileged communications between patients and their attending physicians as an absurd privilege, and quotes a dissenting opinion from the Supreme Court of Wisconsin stating that such a statute cheats rather than promotes justice. This is one judge's view—and a view differing from that of his colleagues. The rule as to licensed physicians in Michigan is viewed as beneficent by the legislative branch. With regard to the intern "on medical service" engaged in treating the patient by injections for diagnostic purposes and taking the patient's medical history and statement of physical condition on behalf

of the attending physician and for his use and help in treating the patient, the purpose of the law making privileged such communications between the patient and physician would be directly thwarted by permitting the intern to disclose what the patient had told him; and the statute would be thereby annulled.

In Eureka-Maryland Assur. Co. v. Gray, 74 App.D.C. 191, 121 F.2d 104, 107, cert. denied 314 U.S. 613, 62 S.Ct. 114, 86 L.Ed. 494, the court had occasion to pass upon the statute applicable to the District of Columbia, which was not in the exact language of the Michigan statute providing for the privilege in case of any person duly authorized to practice medicine, but rather providing that "no physician or surgeon shall be permitted * * * to disclose any information, confidential in its nature, which he shall have acquired in attending a patient in a professional capacity and which was necessary to enable him to act in that capacity, * * *."

The Court of Appeals, in an opinion by Chief Justice Groner, in that case, held that the privilege applied to an intern taking a medical history of the patient, saying:

"The local statute is very broad. It forbids disclosure by the physician of any information obtained by him in his professional capacity. The intern is himself a physician. He is a graduate of a medical school with a doctor's degree, though, it may be, not licensed to practice his profession in the ordinary way by so holding himself out to the public. But it is common knowledge that a part of his duty is to get the medical history of the patient, and in this respect he is the attending physician. Not only this, but in many instances he does the work of the physician and, in other respects, relieves the physician of professional services which he would ordinarily perform. It would be straining the law to hold that disclosures made to him by the patient are not equally privileged as those made to the physician in charge."

The law making communications between a patient and a physician privileged would be of no value if an intern necessarily engaged in assisting the physician in medical service could reveal it. Where it is the policy of the law to throw its protection around knowledge gained or statements made in confidence, it will find a way to make that protection effective by bringing within its scope the testimony of those whose participation in the confidence is reasonably required. See Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617.

We reaffirm our view that the conclusion of Judge Kaess was correct; that the communication made to the intern by Mr. Champion, under the circumstances of this case, was privileged; and, in accordance with the foregoing, the petition for rehearing is denied.