Robert Lynn **GONZALEZ**, Appellant,

v.

The **STATE** of Texas.

No. 1378–00.

Court of Criminal Appeals of Texas.

May 16, 2001.

David Cunningham, Houston, for appellant.

William J. Delmore, III, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

### *OPINION*

MEYERS, J., delivered the unanimous opinion of the Court.

Appellant was convicted of murder and sentenced to life imprisonment. The Court of Appeals affirmed. *Gonzalez v. State*, 21 S.W.3d 595 (Tex.App.—Houston [1st Dist.] 2000). We granted appellant's petition for discretionary review to address whether the Court of Appeals erred in its holding on a conflict of laws question.

In appellant's trial for murder, the State called Pastor Steven Folgheraiter who testified, over objection, that during a counseling session with appellant in California, appellant told him he had done something "really bad." Folgheraiter warned appellant that he could not keep secret anything involving a victim, but appellant went on to confess to killing the victim without provo-

cation.[1] Appellant argued the communication was privileged under Texas Rule of Evidence 505, but the trial court allowed it by applying section 1032 of the California Evidence Code. The Court of Appeals upheld the trial court's ruling, applying the "most significant relationship test" and concluding that California law should control admissibility of the privileged communication because the communication took place in California. *Id.* at 597 (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), *Tompkins v. State*, 774 S.W.2d 195 (Tex.Crim.App.1987) and *Ford Motor Co. v. Leggat*, 904 S.W.2d 643 (Tex.1995)).

Appellant claims the Court of Appeals' opinion conflicts with *Davidson v. State*, 25 S.W.3d 183 (Tex.Crim.App.2000). He also argues the Court of Appeals erroneously determined that California was the state with the most significant relationship. Finally, he claims that even if California is the state with the most significant relationship, a recognized exception to that rule warrants the application of Texas law in this case. The State argues that under well-accepted conflict of laws principles, the existence of a privilege for a particular communication is dependent upon the law of the State where the conversation occurred.

We note at the outset that both Texas and California recognize a clergy-penitent privilege, to greater and lesser degrees.[2] While the State argues that the statements at issue were not "confidential" under the laws of either state, we need not decide this issue. The only question before us is whether the Court of Appeals erred in applying the California rule instead of the Texas rule.

According to the Restatement (Second) of Conflict of Laws, the general rule as to conflict of laws concerning admissibility of evidence is that the law of the forum applies. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 138 (1971); *Davidson, supra.* The Restatement recognizes three exceptions to this—privileged communications, parol evidence, and the statute of frauds. *Id.* (local law of forum determines admissibility of evidence except as stated in § 139 (privileged communications), § 140 (parol evidence) and § 141 (statute of frauds)). In the case of privileged communications, admissibility depends upon which state had the "most significant relationship" with the communication:

1. In his statement to police, appellant admitted killing the victim, but stated that the victim had attempted to rape appellant's girlfriend and appellant had acted in her defense. The girlfriend testified that appellant's statement was untrue. She said appellant attacked the victim without provocation.

2. Texas Rule of Evidence 505, *Communications to Members of the Clergy*, provides in part that "[a] person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a member of the clergy in the member's professional character as spiritual advisor." TEX.R. EVID. 505(b). A communication is "confidential" under the rule "if made privately and not intended for further disclosure except to other persons present in fur-therance of the purpose of the communication." TEX.R. EVID. 505(a)(2).

California Evidence Code § 1032 provides in part that "a penitent, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a penitential communication." CAL. EVID.CODE § 1033. A "penitential communication" is "a communication made in confidence, in the presence of no third person so far as the penitent is aware, to a clergyman, who in the course or practice of his church, denomination, or organization, is authorized or accustomed to hear such communication and, under the discipline or tenets of his church, denomination, or organization, has a duty to keep such communications secret." CAL. EVID.CODE § 1032.

(1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum. (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1971). The rule is consistent with the Restatement's overriding policy of favoring admissibility.[3] Under subpart (1) of the rule, admitting the evidence in the forum if it is not privileged in the law of the state with the most significant relationship will not infringe on any interests of the state with the most significant relationship:

> There can be little reason why the forum should exclude evidence that is not privileged under the local law of the state which has the most significant relationship with the communication, even though this evidence is privileged under the local law of the forum. Admitting such evidence cannot defeat the expectations of the parties since, if they relied

on any law at all, they would have relied on the local law of the state of most significant relationship. This state has a substantial interest in determining whether evidence of the communication should be privileged. If this state has not chosen to make certain evidence privileged, its interests obviously will not be infringed if this evidence is admitted in the forum. Admission of this evidence, if relevant, will usually be in the best interests of the forum since such admission will assist the forum in arriving at the true facts and thus in making a correct disposition of the case.

*Id.* § 139 cmt. c (Supp.1988). Under subpart (2), where the communication would not be privileged in the forum but would be privileged in the state with the most significant relationship, the forum's interest in reaching correct results in its domestic litigation strongly favors disclosure of all evidence that is not privileged under its own laws.[4] *Id.* § 139 cmt. d (Supp. 1988).

We have previously relied upon the Restatement of Conflict of Laws for guidance on choice of law questions. *Davidson, supra.* Specifically with respect to choice-of-law questions involving privileged communications, the Texas Supreme Court applies the "most significant relationship" test as set forth in the Restatement (Second) provision pertaining to privileged

---

**3.** In essence, if the communication would not be privileged under either the law of the forum or the law of the state with the most significant relationship, then it is admissible (unless its admission would be contrary to strong public policy or there is some special reason why the forum's policy of favoring admission should not be followed).

**4.** The forum should nonetheless consider a number of factors in deciding whether there is some reason why its policy of favoring admission should not control:

Among the factors that the forum will consider in determining whether or not to admit the evidence are (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties.

*Id.* § 139 cmt. d (Supp.1988).

communications.[5] *Leggat*, 904 S.W.2d at 647 (although § 138 of Restatement provides that law of forum governs general admissibility of evidence, § 139, which governs privileged communications, directs court to identify state with most significant relationship with communication). We agree with our sister court that the choice-of-laws rule for privileged communications set out in the Restatement (Second) is a reasonable one.

■ Appellant argues that the "most significant relationship" test should not control here because the rules at issue are procedural and evidentiary in nature, rather than rules pertaining to substantive rights. Appellant says this case is just like *Davidson*, which held that the law of the forum was applicable to evidentiary and procedural rules.[6] But privileges, unlike other rules of evidence, and unlike rules of procedure, are peculiar in their purpose of preserving a substantive right:

Unlike other rules of evidence, privileges are not designed primarily to exclude unreliable evidence. In fact, privileges expressly subordinate the goal of truth-seeking to other societal interests [protected by the privilege].

*Ludwig v. State*, 931 S.W.2d 239, 242 (Tex. Crim.App.1996). The societal value in preserving the relationship at issue in the privilege is viewed as weightier than the societal interests at issue in the context of revealing the confidences of such relationship in a trial.[7] *See id.* at 242 n. 10 ("The basis of the immunity given to communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails" quoting *Wolfle v. United States*, 291 U.S. 7, 14, 54 S.Ct. 279, 78 L.Ed. 617 (1934)). Accordingly, the Restatement (Second) recognizes that privileges are an exception to the

5. The Texas Supreme Court had previously held that "all conflicts cases sounding in tort will be governed by the 'most significant relationship' as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts." *Gutierrez v. Collins* 583 S.W.2d 312, 318 (Tex. 1979).

6. In *Davidson*, the defendant made inculpatory oral statements to federal agents while in custody in Montana. The statements were not admissible under Code of Criminal Procedure article 38.22, because they had not been recorded electronically; the statements were in compliance with federal and Montana laws. Relying on the Restatement (Second) of Conflict of Laws, section 138, we noted that a basic tenet of choice-of-laws resolution is that the law of the forum in which the judicial proceeding is held determines the admissibility of evidence. *Davidson*, 25 S.W.3d at 185. Because article 38.22, by its plain language, set out conditions which must be satisfied before a statement made during custodial interrogation would be admissible in evidence, we held such rule to be evidentiary in nature. The general rule that the law of the forum applies to questions of admissibility of evidence was thus applicable to the defendant's statement in *Davidson*.

7. Rules of privilege are not evidentiary in their focus, but are established for the purpose of protecting certain relationships and encouraging open and free-flow of communication between persons in such relationships. *Cf. Carmona v. State*, 941 S.W.2d 949, 953 (Tex.Crim.App.1997)("attorney-client privilege is designed for the benefit of the client by guaranteeing to the client the confidentiality necessary to promote forthright communications between the lawyer and the client"); *Ludwig, supra* (marital communications privilege based on belief in "sanctity of privacy in marriage, the desirability of free communication between spouses, and the concept that the preservation and maintenance of marital relations requires that husband and wife be permitted to talk confidentially without fear of having their communications disclosed to others, even in court," quoting McFall & Little, Privileges Under Texas Law: A Dying Breed?, 31 S.Tex.L.Rev. 471, 478 (1990)).

general rule of the forum, otherwise applicable to most other rules of evidence, as privileges are more akin to rules pertaining to substantive rights.[8] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 138 (1971). We agree with this view. *Cf. Ludwig, supra; Leggat, supra.*

■ Appellant's next argument is that the Court of Appeals erred in concluding that, because the communication took place in California, then California was the state with the most significant relationship with the communication. *Gonzalez*, 21 S.W.3d at 597. The comments to the Restatement (Second) of Conflict of Laws provide that the state where the communication took place is generally the state with the most significant relationship. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 cmt. e (Supp.1988). Further, where the parties had no previous relationship, the state where the communication took place will be the state of the most significant relationship. *Id.* Although appellant committed the offense in Texas and the communication concerned the commission of that offense, Folgheraiter had no apparent ties to Texas. There is no evidence that appellant and Folgheraiter had any prior relationship outside of the state of California.[9] Appellant confided in Folgheraiter in his capacity as a clergyman serving in the state of California, where appellant was then living. Appellant had no reason to think that his communication would somehow be affected by the laws of Texas. Folgheraiter himself had no intentions of keeping a communication confidential if it involved a victim, and had warned appellant of this position. The Court of Appeals did not err in holding California to be the state with the most significant relationship with the communication.[10]

■ Finally, appellant argues that even if California has the most significant relationship with the communication, Texas law should nonetheless control because admission of the questioned communication would be contrary to the strong public policy of Texas .[11] Appellant acknowledges

---

**8.** A "substantive right" has been defined as "[a] right to the equal enjoyment of fundamental rights, privileges and immunities," BLACK'S LAW DICTIONARY at 745 (5th ed.1983), or "a right that can be protected or enforced by law." BLACK'S LAW DICTIONARY at 1324 (7th ed.1999). A "procedural right" is viewed as a "right that helps in the protection or enforcement of a substantive right." *Id.* at 1323. A "privilege" is defined in part as "[a] particular and peculiar benefit or advantage enjoyed by a person, company, or class, beyond the common advantages of other citizens." BLACK'S LAW DICTIONARY at 1197 (6th ed.1990).

**9.** Folgheraiter testified that he had been appellant's youth pastor when appellant was growing up, and had known appellant for about ten years, but did not testify as to where he had been living during those years. Folgheraiter testified he had been employed at his current church in California for about four years. Appellant's mother lived in California and had contacted Folgheraiter and requested that he meet with appellant. There is also testimony about appellant "moving

back" to California after the commission of the offense in Texas, suggesting that appellant had previously lived in California for some time.

**10.** Appellant argues that Texas is the state with the "most significant relationship" because the offense occurred in Texas, "[t]he relationship between the appellant and the decedent was centered in Texas" and because appellant was living in Texas at the time of the offense. These facts demonstrate the relationship between Texas and the commission of the offense, not between Texas and appellant's communication with Folgheraiter.

**11.** As stated above, the Restatement (Second) provides that "[e]vidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, *unless the admission of such evidence would be contrary to the strong public policy of the forum.*" RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1971).

that a clergyman's privilege was not formally recognized by Texas courts until 1967, but says that an unofficial privilege was allowed by the trial courts. Appellant further argues that the legislature's recent rejection of any limitation on the trial court's authority to compel disclosure is evidence of Texas' strong public policy position regarding the privilege.

The privilege was first recognized by the Texas legislature in 1967 when it was codified as article 3715a of the Revised Civil Statutes. Act of June 12, 1967, 60th Leg. ch. 485 § 1, 1967 Tex. Gen. Laws 1005. Under this provision, the privilege could be wholly put aside and disclosure compelled if the trial court determined disclosure "was necessary to a proper administration of justice." *Id.* While appellant correctly points out, based on the lack of reported cases on the statutory privilege, that disclosure was probably rarely, if ever, compelled, the provision nonetheless reflected public policy to provide less than an unlimited privilege. Article 3715a was repealed for civil cases with the passage of Texas Rule of Civil Evidence 505, effective September 1, 1983, and for criminal cases with the enactment of Texas Rule of Criminal Evidence 505, effective September 1, 1986, both of which were supplanted by Texas Rules of Evidence 505 in 1998. The privilege, on its face under Rule 505, appears to be absolute and without exception, but there is some indication that disclosure may be compelled in two situations. STEVEN GOODE, OLIN GUY WELLBORN III, M. MICHAEL SHARLOT, TEXAS PRACTICE GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 505.1 at 399 (2nd Ed.1993). The Texas Family Code provides that, with the ex-

ception of the attorney-client privilege, evidence will not be excluded on the ground of a privileged communication in proceedings regarding abuse and neglect of a child.[12] *Id.* (referring to Texas Family Code § 34.04). A clergyman may also be deemed to have waived any privilege and may be compelled to disclose a confidential communication if he testifies as a character witness for the confidant. *Id.* at 399–400 (referring to Texas Rule of Evidence 511). Despite Rule 505's facially absolute language, we decline to view the privilege as so deeply-rooted in the state's jurisprudential history that application of another state's version of the privilege, under the facts of this case, would be abhorrent to this State's public policy.

For the reasons stated above, we hold that the Court of Appeals did not err in its application of the "most significant relationship" test to the conflict of laws question presented in this case. The judgment of the Court of Appeals is affirmed.

---

**12.** The Family Code further imposes a duty of reporting to the authorities suspected instances of child abuse, and this duty expressly extends to clergy whose communications would otherwise be privileged. STEVEN GOODE, OLIN GUY WELLBORN III, M. MICHAEL SHARLOT, TEXAS PRACTICE GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 505.1 at 124 n. 13 (Supp.1998)(referring to Texas Family Code § 261.101(c)).